**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>Robert J. Morin</u>

          v.                              Case No. 20-cv-615-PB
                                          Opinion No. 2020 DNH 218
<u>Eastern Bearings, Inc.</u>
<u>d/b/a Eastern Industrial Automation</u>


### <u>MEMORANDUM AND ORDER</u>


Robert Morin filed a complaint in New Hampshire state court
against his former employer, Eastern Bearings, Inc. ("Eastern"),
alleging federal and state law causes of action for retaliation,
discrimination, and harassment, as well as claims for violations
of the Family and Medical Leave Act.  After removing the action
to federal court, Eastern moved to dismiss the complaint for
failure to state a claim upon which relief may be granted.  For
the following reasons, I grant in part and deny in part
Eastern's motion.


## I.    <u>BACKGROUND</u>

Morin worked for Eastern from 2014 until 2018 as an
associate in its domestic sales department in Manchester, New
Hampshire.  Compl. ¶¶ 7, 10.  During most of that time, he
worked under the supervision of James Ordeshook.  Compl. ¶ 10.

Morin is part Native American and was thirty years old at
the start of his employment.  Compl. ¶¶ 3, 31.  Ordeshook

"frequently made fun of" Morin's age, made him feel stupid for asking questions, and expressed hatred for "millennials," complaining about their work ethic and claiming they "could not do anything right."  Compl. ¶ 30.  Ordeshook also made racist and derogatory comments about many different groups.  For example, every year around Columbus Day, Ordeshook referred to Native Americans as "spear chuckers" and "useless leeches on society."  Compl. ¶ 31.  Morin does not allege, however, that Ordeshook was aware of his Native American heritage.

During his employment at Eastern, Morin associated with his fiancé's autistic brother.  Compl. ¶¶ 16, 63.  When Morin took time off work to attend a Special Olympics golf tournament with his fiancé's brother, Ordeshook ridiculed him.  Compl. ¶ 19.  Ordeshook also used the word "retard" frequently within Morin's earshot.  Compl. ¶ 18.

Morin's son, who was an infant at the time, had "chronic medical issues," including "ear infections and complications" that required frequent medical appointments.  Compl. ¶¶ 11, 37.  Whenever Morin took time off work due to his son's illness, Ordeshook either made fun of him, called him derogatory names, refused to speak with him, took commission orders away from him, assigned him non-commission work, told him that other people came to work when their kids were sick, or told his co-workers how much Morin was earning.  Compl. ¶¶ 13-14, 21-27.  On many

occasions he denied Morin's requests for unpaid time off to care
for his son and never offered him FMLA leave.  Compl. ¶ 28.
When Morin inquired about paternity leave, Ordeshook ridiculed
him.  Compl. ¶¶ 25-26.  On one occasion in April 2018, Ordeshook
instructed Human Resources not to pay Morin for a sick day Morin
had taken to care for his ill son.  Compl. ¶¶ 37-40.  After
Morin contacted Human Resources and the Department of Labor
about the issue, he was paid for that day.  Compl. ¶¶ 39, 41.

On May 16, 2018, Morin sent an email to Human Resources,
complaining about "Ordeshook's racist comments, inappropriate
and harassing behavior in the office, bullying, and many other
issues, including being harassed for requesting information
about paternity leave and taking time to attend to relatives
with both disabilities and illnesses."  Compl. ¶ 45.  The next
day, Morin met with a representative of Human Resources and
elaborated on Ordeshook's offending behavior.  Compl. ¶ 46.

On May 18, Human Resources informed Morin that he could be
transferred to a position in Eastern's international sales
department at a nearby location.  Compl. ¶ 52.  The new
position, however, involved an estimated $15,000-$20,000 less in
commissions than Morin was earning at the time, as well as
potential international travel, which was unappealing to Morin
due to his family obligations.  Compl. ¶ 53.  When Eastern
formally offered him that position on May 21, Morin declined.

Compl. ¶¶ 55, 57.  The next day, Eastern informed Morin "that it was not an option for [him] to stay where he was, and that he was being moved to the [new position] the next day."  Compl. ¶ 58.  Later that day, Morin gave Eastern notice that he was resigning effective June 5.  Compl. ¶ 59.  He was fired the next morning.  Compl. ¶ 60.  This lawsuit followed.

The complaint alleges six counts: (1) retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 et seq. ("Title VII"), and its state-law analog, Chapter 354-A of the New Hampshire Revised Statutes, N.H. Rev. Stat. Ann. § 354-A:7 ("Chapter 354-A"); (2) discrimination and harassment on account of age under Chapter 354-A; (3) association discrimination under Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), and Chapter 354-A; (4) harassment based on race and national origin under Title VII and Chapter 354-A; (5) interference and retaliation under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"); and (5) "intersectional discrimination" under Title VII, the ADA, and Chapter 354-A. Eastern seeks dismissal on all counts.  Morin objects.  I held a hearing on the motion on August 18, 2020.

## II.  <u>STANDARD OF REVIEW</u>

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must make factual allegations

sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  Id.  A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

In testing a complaint's sufficiency, I employ a two-step approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  First, I screen the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (internal quotation marks and alterations omitted).  A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed.  Id. Second, I credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then determine if the claim is plausible.  Id.  The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct.  Twombly, 550 U.S. at 556.  The "make-or-break standard" is that those allegations and inferences, "taken as true, must state a plausible, not a merely conceivable, case for

5

relief." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

In a discrimination suit, a plaintiff is not required to "plead facts sufficient to establish a prima facie case at the pleading stage." Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002)). "But this does not mean 'that the elements of the prima facie case are irrelevant to a plausibility determination . . . .'" Germanowski v. Harris, 854 F.3d 68, 72 (1st Cir. 2017) (quoting Rodriguez-Reyes, 711 F.3d at 54). Rather, those elements "may be used as a prism to shed light upon the plausibility of the claim," bearing in mind that plausibility requires pleading "enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial — in a discrimination case, the prima facie standard." Rodriguez-Reyes, 711 F.3d at 54.

### III. **ANALYSIS**

Eastern argues that each of Morin's claims fails to state a claim upon which relief may be granted. I address the claims in turn and conclude that Morin has adequately pleaded claims for retaliation under Title VII and Chapter 354-A, as well as age-based discrimination and harassment under Chapter 354-A. The remaining claims are legally deficient.

6

A.    **Retaliation (Count I)**

Morin claims that Eastern retaliated against him for reporting Ordeshook's harassment by demoting him to a position with less favorable conditions, including significantly less pay and international travel.  He contends that this conduct violated both Title VII and Chapter 354-A.

Title VII "prohibits employers from retaliating against employees who report violations of that title." Carlson v. Univ. of New Eng., 899 F.3d 36, 43 (1st Cir. 2018) (citing 42 U.S.C. § 2000e-3(a)).  The parties agree that the same standard applies to Morin's Title VII and Chapter 354-A claims.  See Dennis v. Osram Sylvania, Inc., 549 F.3d 851, 856 (1st Cir. 2008) ("The New Hampshire Supreme Court looks to and finds 'instructive' federal standards established under Title VII . . . in resolving retaliation claims under N.H. Rev. Stat. Ann. § 354-A.").  To establish a prima facie case of retaliation under either law, a plaintiff must show that (1) he engaged in protected conduct; (2) he experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action. Id. at 856-57.  In this context, an adverse employment action is one that "a reasonable employee would have found . . . materially adverse," meaning that such action "well might have 'dissuaded a reasonable worker from making or supporting a charge of

discrimination.'" Morales-Vallellanes v. Potter, 605 F.3d 27, 36 (1st Cir. 2010) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 54 (2006)); see Madeja v. MPB Corp., 149 N.H. 371, 378-80 (2003). This is an objective standard that requires more than "petty slights or minor annoyances." Carlson, 899 F.3d at 43 (quoting Burlington, 548 U.S. at 68). Examples of actionable conduct include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Morales-Vallellanes, 605 F.3d at 36.

Eastern does not dispute that Morin engaged in statutorily protected conduct when he complained about Ordeshook's harassment to Human Resources. It maintains, however, that Morin did not suffer an adverse employment action after his complaint. In the alternative, Eastern contends that any adverse action was not causally connected to Morin's protected activity. Eastern is wrong on both scores.

Morin has plausibly alleged that Eastern's action in transferring him to the international sales department constituted a materially adverse employment action. The transfer allegedly involved a significant decrease in his commission-based pay and thus constituted a demotion that would

8

have deterred a reasonable employee from reporting harassment. See Morales-Vallellanes, 605 F.3d at 36.  The allegation that the demotion occurred mere days after Morin complained to Human Resources about Ordeshook's behavior suffices to show a plausible connection between the protected activity and the adverse employment action.  See Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 25 (1st Cir. 2014) (noting that "temporal proximity" between adverse employment action and protected conduct can help establish causation); Sánchez-Rodríguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 15 (1st Cir. 2012) (same).  Accordingly, Morin has stated a claim for retaliation under Title VII and Chapter 354-A.[1]

## B.   Age-Based Discrimination and Harassment (Count II)

Morin alleges that Eastern is also liable for age-based discrimination and harassment in violation of Chapter 354-A.  In support of his claim, Morin, who was between thirty and thirty-four years old during his employment, cites Ordeshook's comments making fun of Morin's young age and his disparaging comments

---

[1] Eastern also argues that Morin cannot establish but-for causation on his retaliation claim because he alleges that his demotion was also caused by various forms of discrimination. But a plaintiff is permitted to plead multiple alternative claims, even if his claims are inconsistent.  See Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim . . . alternatively. . . ."); id. 8(d)(3) ("A party may state as many separate claims . . . as it has, regardless of consistency.").

about millennials.  Eastern argues that youth is not a protected
class under Chapter 354-A and that, in any event, Morin has not
pleaded the elements of those claims.

Chapter 354-A makes it unlawful for an employer to "refuse
to hire or employ or bar or to discharge from employment [an]
individual" or to "discriminate against such individual in
compensation or in terms, conditions or privileges of
employment" because of the individual's "age."  N.H. Rev. Stat.
Ann. § 354-A:7.  Unlike the federal Age Discrimination in
Employment Act ("ADEA"), which expressly protects only persons
who are at least forty years old, see 29 U.S.C. 631(a), Chapter
354-A does not define the term "age."  The New Hampshire Supreme
Court has not had an opportunity to construe the term either.
Although that court has looked to decisions under analogous
federal statutes when interpreting Chapter 354-A, see, e.g.,
Burnap v. Somersworth Sch. Dist., 172 N.H. 632, 637 (2019), it
is difficult to predict whether it would do so in this instance.
Because the parties have not adequately briefed this unresolved
question of state law, I decline to address it at this stage.
Instead, for purposes of the motion to dismiss, I assume that
Chapter 354-A protects younger workers, without prejudice to the
defendant's right to renew its argument at a later stage or to
request certification of the question to the New Hampshire
Supreme Court.

Assuming youth is a protected class, Morin has pleaded a minimally sufficient claim for age-based discrimination under Chapter 354-A.  The complaint, read as a whole, plausibly alleges that Morin was "discriminate[d] in . . . terms, conditions or privileges of employment" on account of his age. See N.H. Rev. Stat. Ann. § 354-A:7.  Ordeshook's comments reflect a discriminatory animus based on Morin's age.  The complaint alleges that Morin's age "played a part in his" demotion, Compl. ¶ 76, which, as discussed above, adversely changed the terms and conditions of his employment.  Although it may prove difficult for Morin to establish a causal link between the demotion and his young age, considering that he was four years *older* at the time of his demotion than when he was hired, I cannot say that the alleged causal link is so attenuated to render his claim legally deficient at the pleadings stage.

Morin's allegations that Ordeshook's age-based harassment created a hostile work environment are likewise minimally sufficient to state a claim under Chapter 354-A.  To be actionable, harassment must be "sufficiently severe [or] pervasive to alter the terms and conditions of [one's] employment."  Madeja, 149 N.H. at 380.[2]  The challenged conduct

---

[2] Although the New Hampshire Supreme Court has not expressed an opinion on this precise point, it is clear from the cases cited in Madeja that allegations of either severe or pervasive harassment may state a claim of a hostile work environment under

must be "objectively and subjectively offensive, one that a
reasonable person would find hostile or abusive, and one that
the victim in fact did perceive to be so." Noviello v. City of
Bos., 398 F.3d 76, 92 (1st Cir. 2005) (quoting Faragher v. City
of Boca Raton, 524 U.S. 775, 787 (1998)).  In determining
whether a reasonable person would find conduct hostile or
abusive, courts must consider the totality of the circumstances,
including "frequency of the discriminatory conduct; its
severity; whether it is physically threatening or humiliating,
or a mere offensive utterance; and whether it unreasonably
interferes with an employee's work performance." Harris v.
Forklift Sys., 510 U.S. 17, 23 (1993).  Further, courts must
bear in mind that questions of severity and pervasiveness are
typically questions of fact "[s]ubject to some policing at the
outer bounds." Gorski v. N.H. Dep't of Corr., 290 F.3d 466, 474
(1st Cir. 2002).

    Morin alleges that Ordeshook "made fun of . . . his young
age" and commented that he "hated millennials" because they
lacked a good work ethic and "could not do anything right."
Compl. ¶ 30.  The harassment allegedly occurred almost daily for

---

Chapter 354-A, as is the case under Title VII.  See Madeja, 149
N.H. at 380 (citing Marrero v. Goya of P.R., Inc., 304 F.3d 7,
26 (1st Cir. 2002); Stutler v. Ill. Dep't of Corr., 263 F.3d
698, 703 (7th Cir. 2001); Richardson v. N.Y. State Dep't of
Corr. Serv., 180 F.3d 426, 446 (2d Cir. 1999); Gunnell v. Utah
Valley State Coll., 152 F.3d 1253, 1264-65 (10th Cir. 1998)).

four years.  Compl. ¶ 30.  Although hearing such comments on
isolated occasions likely would not rise to the level of
severity necessary to demonstrate an objectively hostile work
environment, I cannot say the same about such incidents
occurring at the alleged frequency.  See Rivera-Rivera v. Medina
& Medina, Inc., 898 F.3d 77, 93 (1st Cir. 2018) (reversing grant
of summary judgment in employer's favor on age-based hostile
work environment claim under Title VII and ADEA on pervasiveness
grounds where plaintiff "was taunted about her age nearly every
single day for over two years" by being called "vieja" (old) or
"worthless").  Accepting as true the frequency of the comments,
they were sufficiently pervasive to state an age-based hostile
work environment claim under state law.

## C.   Association Discrimination (Count III)

Morin next alleges that Eastern discriminated against him
on account of his association with his fiancé's autistic
brother, in violation of the ADA and Chapter 354-A.[3]  The parties
assume that the ADA standard applies to the state law claim.

The ADA prohibits "excluding or otherwise denying equal
jobs or benefits to a qualified individual because of the known
disability of an individual with whom the qualified individual

---

[3] The complaint also alleges association discrimination based on
Morin's association with his son, but his counsel conceded at
oral argument that this claim is not adequately pleaded.

is known to have a relationship or association." 42 U.S.C.
§ 12112(b)(4).  The relationship need not be familial but can
extend to business, social or other relationships or
associations.  See 29 C.F.R. § 1630.8.  The ADA defines
disability as (1) a physical or mental impairment that
substantially limits a major life activity; (2) a record of such
an impairment; or (3) being regarded as having such an
impairment.  42 U.S.C. § 12102(2).  To establish a prima facie
case of association discrimination, a plaintiff must show that
(1) he experienced an adverse employment action; (2) he was
qualified to perform his job at the time; (3) the employer knew
the employee associated with a disabled person; and (4) the
circumstances of the adverse employment action give rise to a
reasonable inference that this association was a determining
factor in the employer's decision.  St. Hilaire v. Morgan
Stanley Smith Barney, LLC, 2012 DNH 084, 2012 WL 1658389, at *7
(D.N.H. May 11, 2012); see Oliveras-Sifre v. P.R. Dep't of
Health, 214 F.3d 23, 26 (1st Cir. 2000).

At most, the complaint alleges that Eastern knew Morin once
attended a Special Olympics event with his fiancé's brother.
There is no allegation that Eastern knew his fiancé's sibling
had a disability.  Further, the complaint's allegations
concerning Morin's demotion do not give rise to a reasonable
inference that his association with his fiancé's brother had any

effect on Eastern's decision to demote him, let alone that it was a determining factor in the adverse employment action.  The complaint, therefore, does not plead sufficient facts to support a plausible inference that Morin was discriminated against based on his association with a disabled person.[4]

**D.   Harassment Based on Race and National Origin (Count IV)**

Morin contends that Ordeshook's disparaging comments about Native Americans created a hostile work environment actionable under Title VII and Chapter 354-A.  Here, too, the parties agree that the federal and state standards are essentially the same.

To state a hostile work environment claim under Title VII, a plaintiff must allege, among other elements, that the offending conduct occurred because of his membership in a protected class.  Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 317 (1st Cir. 2016); Rivera v. P.R. Aqueduct & Sewers Auth., 331 F.3d 183, 189 (1st Cir. 2003).  Where membership in a protected class is not obvious or documented, the plaintiff must allege that the employer knew he belonged to the protected class.  See O'Connor v. Northshore Int'l Ins. Servs., 61 F.

---

[4] To the extent Morin alleges that he was harassed on account of his association with a disabled person, this claim must also fail.  Assuming such a claim is cognizable, absent allegations that Eastern knew Morin's fiancé's brother was disabled, Morin cannot plausibly allege that he was harassed on the basis of his association with a disabled person.

App'x 722, 724 (1st Cir. 2003) (per curiam); Hunter v. United

Parcel Serv., Inc., 697 F.3d 697, 703 (8th Cir. 2012); Geraci v.

Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 581 (3d Cir. 1996).

   Morin's counsel conceded at oral argument that Morin does

not "look like" someone who is Native American and that his

complaint fails to allege that Eastern knew about his Native

American heritage.  These concessions are fatal to the claim

that Morin was harassed *because of* his race and national origin.

Absent such knowledge, Morin has not plausibly alleged that the

harassment was motivated by his membership in the protected

class.[5]

**E.   FMLA Interference and Retaliation (Count V)**

   Morin asserts that Eastern unlawfully interfered with his

rights under the FMLA and retaliated against him for exercising

those rights.  In support of his claims, Morin alleges that

Ordeshook knew he was frequently missing work to care for a sick

child, harassed him and once docked his pay for doing so, and

failed to give him a copy of the company's sick leave policy.

Those allegations do not state a viable claim under the FMLA.

---

[5] Although count IV of the complaint arguably also asserts a
claim for discrimination based on race and national origin,
Morin's counsel confirmed at oral argument that he is asserting
only a hostile work environment claim.  In any event, a
discrimination claim would fail on the same ground.

16

The FMLA entitles an "eligible employee" to take twelve weeks of leave during any twelve-month period for, among other reasons, the care of a family member with a "serious health condition." 29 U.S.C. § 2612(a)(1)(C).  The statute makes it unlawful for "any employer to interfere with, restrain, or deny the exercise of" an FMLA-protected right.  Id. § 2615(a)(1).  To make out a prima facie case for FMLA interference, a plaintiff must show that (1) he was an eligible employee; (2) his employer was covered by the FMLA; (3) he was entitled to FMLA leave; (4) he gave his employer notice of his intention to take FMLA leave; and (5) his employer denied him FMLA benefits to which he was entitled. Carrero–Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 722 n.8 (1st Cir. 2014); Ferreira v. Monadnock Paper Mills, Inc., 2014 DNH 038, 2014 WL 768840, at *2 (D.N.H. Feb. 25, 2014).

Morin has alleged that he was an eligible employee and that Eastern was a covered employer.  See Compl. ¶ 8 (alleging that Morin worked the requisite length of time and number of hours and that Eastern had the requisite number of employees).  However, the complaint's allegations do not give rise to a reasonable inference that Morin was entitled to leave under the FMLA to care for his ill son.  The statute defines a "serious health condition" for which leave may be sought as one requiring "inpatient care" or "continuing treatment by a health care

17

provider." 29 U.S.C. §§ 2612, 2611(11).  "The continuing
treatment test for a serious health condition is met if [a
person] is incapacitated . . . for more than three consecutive
days and . . . is treated by a health care provider on two or
more occasions." Ferreira, 2014 WL 768840, at *3 n.3 (internal
quotation marks omitted).  The complaint merely alleges that
Morin's son had "chronic medical issues requiring frequent
medical appointments" and had "repeated medical issues with ear
infections and complications."  Compl. ¶¶ 11, 37.  These
allegations do not lend themselves to a reasonable inference
that his son's condition required inpatient care or met the
continuing treatment test.

Further, the complaint does not allege sufficient facts to
permit a reasonable inference that Morin provided Eastern the
requisite notice of his intention to use FMLA benefits.  See
Ferreira, 2014 WL 768840, at *3; 29 C.F.R. § 825.303(a-b).  No
magic words are needed to give such notice, but the employee
must do more than tell the employer he needs to take a sick
child to the doctor, which is all Morin allegedly did.  See
Germanowski, 854 F.3d at 72 (noting that the employee does not
satisfy the burden of notifying the employer of the need to take
FMLA leave "merely by calling in sick").

Morin's FMLA retaliation claim fares no better.  To make
out a prima facie case of FMLA retaliation, a plaintiff must

show that (1) he "availed [himself] of a protected FMLA right;
(2) he was "adversely affected by an employment decision;" and
(3) "there was a causal connection between [his] protected
conduct and the adverse employment action." Id. at 73 (quoting
Carrero-Ojeda, 755 F.3d at 719).  The complaint alleges that
Ordeshook retaliated against Morin for taking a sick day to care
for his son by docking his pay.  As discussed above, the
complaint does not allege sufficient facts to permit a
reasonable inference that Morin was entitled to FMLA benefits to
care for his sick son.  Therefore, his FMLA retaliation claim
necessarily fails.

## F.   **Intersectional Discrimination (Count VI)**

Finally, Morin alleges he was a victim of "intersectional
discrimination" because he was discriminated against on the
bases of age, association with a disabled person, as well as his
race and national origin.  He has cited no legal support for the
proposition that "intersectional discrimination" is viable as a
separate count of a complaint.  See Giordano v. Pub. Serv. Co.
of N.H., 2020 DNH 078, 2020 WL 2404885, at *5 (D.N.H. May 12,
2020).  Accordingly, I dismiss the claim.

## IV.   **CONCLUSION**

For the foregoing reasons, I deny Eastern's motion to
dismiss (Doc. No. 4) with respect to counts I and II of the
complaint and grant it with respect to counts III through VI.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

December 16, 2020

cc:  Leslie H. Johnson, Esq.
     Brian H. Lamkin, Esq.
     Julie B. Brennan, Esq.